IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROSCOE B. THOMPSON,           )
      Petitioner,               )
                                )    Civil Action No. 12-208
v.                            )    (Criminal No. 03-72)
                                )
UNITED STATES OF AMERICA,     )
      Respondent.               )

MEMORANDUM OPINION

**CONTI**, District Judge

    Pending before the court is a motion to vacate, set aside, or correct sentence by a person in federal custody filed by Roscoe B. Thompson ("Thompson" or "petitioner") pursuant to 28 U.S.C. § 2255 (ECF No. 1000).[1] After reviewing petitioner's motion, the brief in opposition (ECF No. 1015) filed by the United States of America (the "government"), petitioner's reply (ECF No. 1022) and the government's response to petitioner's reply (ECF No. 1065), the court will deny the motion for the reasons set forth below.

**I. Background**

    In 2002 and 2003, law enforcement agents obtained evidence, <u>inter alia</u>, by means of cellular wiretaps that Michael Good ("Good"), together with a number of other individuals, including Thompson, Daniel Matthews ("Matthews"), and Larry Ferguson ("Ferguson"), were involved in the distribution of large quantities of cocaine, crack, and heroine in the North Side area of Pittsburgh, Pennsylvania. As a result of the investigation several individuals, including Thompson, were jointly charged with

---

[1] All docket references (ECF No.) in this memorandum opinion will be to the filings at Criminal No. 03-72.

conspiracy to possess and distribute controlled substances from November 20, 2002, to February 8, 2003 and other related charges. Several individuals pleaded guilty and agreed to cooperate. After the Drug Enforcement Administration conducted debriefings of the cooperating individuals, a twenty-five-count superseding indictment was returned by a grand jury on August 5, 2004. (ECF No. 1).

Petitioner, Matthews, and Ferguson were tried before a jury beginning on May 9, 2005. A mistrial, however, was declared on June 29, 2005. A retrial began on January 12, 2006, and the jury found Thompson guilty of five counts: one count of conspiracy to distribute and possession with the intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(B)(I) and 846 (count one); two counts of possession with the intent to distribute a quantity of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(C) (counts eight and seventeen); one count of conspiracy to distribute and possession with the intent to distribute 50 grams or more of cocaine base in the form commonly known as crack, in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A)(iii), and 846 (count twenty-one); and one count of possession with the intent to distribute a quantity of cocaine base in the form commonly known as crack, in violation of 21 U.S.C. §§ 841 (a)(1) and 841 (b)(1)(C) (count twenty-two).

Thompson appealed his convictions arguing, among other things, that the evidence was insufficient for a jury to find him guilty of the heroin conspiracy or the crack cocaine conspiracy. The court of appeals rejected "out of hand" his argument with respect to the heroin conspiracy (count one) and concluded with respect to the crack-cocaine conspiracy (count twenty-one) that "[t]he evidence adduced at trial easily supports a rational guilty verdict." United States v. Ferguson, 394 F. App'x 873, 876 n.3,

879 (3d Cir. 2010) ("the record amply supports Thompson's agreement with Good to sell crack-cocaine to others"). The Court of Appeals for the Third Circuit affirmed Thompson's convictions on September 21, 2010. Id. The Supreme Court denied certiorari. Thompson v. United States, 131 S.Ct. 1579 (2011).

Because the government filed an information pursuant to 21 U.S.C. § 851, the defendant for his conviction at county twenty-one (conspiracy to distribute crack cocaine) was sentenced to a mandatory minimum sentence of not less than twenty years imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A)(iii). He was sentenced for his convictions at counts one, eight, seventeen and twenty-two to one hundred sixty-eight months at each count. The court ordered that all sentences would concurrently run. Thompson filed the motion which is the subject of this opinion pursuant to 28 U.S.C. § 2255. (ECF No. 1000).

**II. Standard of Review**

Under § 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside, or correct the sentence

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a). In Hill v. United States, 368 U.S. 424 (1962), the Supreme Court of the United States read the statute as stating four grounds upon which relief can be claimed:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States," (2) "that the court was without jurisdiction to impose such sentence," (3) "that the sentence was in excess of the maximum authorized by law," and (4) that the sentence "is otherwise subject to collateral attack."

Id. at 426-27 (quoting 28 U.S.C. § 2255(a)). The statute provides as a remedy for a sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to § 2255 unless the motion, files, and records of the case show conclusively that the movant is not entitled to relief. 28 U.S.C. § 2255 ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005). An evidentiary hearing is not required, however, if the court determines that the motion, files, and records of the case conclusively support that the motion should be denied as a matter of law. Id.

**III. Discussion**

Petitioner attacks his sentence imposed for the conviction at count twenty-one under the Fair Sentencing Act of 2010 ("FSA"), Pub. L. 111-220, 124 Stat. 2372 (Aug. 3, 20120), challenges the jury instructions and asserts his trial and appellate counsel rendered ineffective assistance of counsel in violation of his Sixth Amendment rights. Each challenge will be addressed.

4

**A. Challenge under the FSA**

Petitioner argues that the FSA, which was enacted on August 3, 2010, applies retroactively and he should be resentenced under the new 18-to-1 ratio for crack cocaine offenses and that the FSA makes the constitutionality of 18 U.S. C. § 841(b) dubious. Thompson was sentenced on October 30, 2006. A motion to resentence due to the retroactivity of the FSA is generally asserted under 18 U.S.C. § 3582(c)(2). Even if this challenge by Thompson to his sentence is considered to have been asserted under 18 U.S.C. § 3582(c)(2), his challenge would fail because he was sentenced to a mandatory minimum term of confinement prior to the date the FSA was enacted.

The FSA reduced penalties for crack cocaine offenses and directed the United States Sentencing Commission to review and within ninety days amend the advisory sentencing guidelines to account for the reductions. Under the statutory amendments, the mandatory minimum sentence to which Thompson was subject would be lowered from twenty years to ten years. In essence, Thompson requests the court to reduce his sentence by retroactively applying the FSA.

In <u>Dorsey v. United States</u>, 132 S.Ct. 2321 (2012), the Supreme Court determined that the FSA is retroactive to defendants who had not been sentenced prior to August 3, 2010, even though the offense in issue occurred prior to its August 3, 2010 effective date. <u>Dorsey</u>, 132 S.Ct. at 2326. Specifically, the Supreme Court recognized that the FSA applied to those "who committed a crack cocaine crime before August 3, 2010, but **were not sentenced until after August 3**." <u>Id.</u> (emphasis added). <u>Dorsey</u> did not imply that the FSA would be applied in situations where, as here, a defendant was sentenced to a mandatory minimum term of imprisonment well before the FSA's August 3, 2010

5

effective date. Even before <u>Dorsey</u>, courts did not apply retroactively the new guidelines in cases where a defendant's mandatory minimum sentence was imposed prior to the FSA's enactment. <u>United States v. Reevey</u>, 631 F.3d 110, 115 (3d Cir. 2010); <u>see</u> <u>United States v. Surratt</u>, 453 F. App'x 202, 203 n. 1 (3d Cir. 2011). <u>Dorsey</u> cannot be read to apply the new guidelines retroactively to cases where at the time of sentencing the FSA was not yet enacted and the guidelines had yet to be amended by the Sentencing Commission. <u>Dorsey</u>, 132 S.Ct. at 2332 (citing the Sentencing Reform Act of 1984, Pub. L. 98-473, 98 Stat. 1987 (1984), which acknowledges that a sentencing court must apply the guidelines in effect at the time of sentencing).

Since <u>Dorsey</u>, courts across the country have denied motions pursuant to both § 3582(c)(2) and § 3582(c)(1)(B) where a defendant's sentencing occurred prior to August 3, 2010. See <u>United States v. Wilson</u>, No. 12-1033, 2012 WL 3217606 (10th Cir. Aug. 9, 2012) (rejecting a motion pursuant to § 3582(c)(1)(B)); <u>United States v. Matthews</u>, No. 12-2141, 2012 WL 3542230 (3d Cir. Aug. 17, 2012) (rejecting a motion pursuant to § 3582(c)(2)); <u>United States v. Gotay</u>, No. 09-165, 2012 WL 3318954, at *2 (E.D. N.Y. Aug. 10, 2012) (noting that "after <u>Dorsey</u>, all of the circuits to address [this factual situation] have adhered to their previous positions" that the FSA is not retroactive with respect to those sentenced before August 3, 2012); <u>United States v. Clark</u>, No 07-184, 2012 WL 3025114, at *1 (D. Neb. Jul. 24, 2012)(collecting cases). Even in situations where a defendant's sentence was not final on August 3, 2010, <u>i.e.</u>, the defendant's conviction was on appeal at the time of enactment of the FSA, the courts of appeals have rejected the argument that the FSA was retroactive to someone who had been sentenced to a mandatory minimum sentence prior to August 3, 2010. See <u>United States v, Hollins</u>,

6

No. 12-5182, 2012 U.S. App. LEXIS 23406 (6th Cir. Nov. 13, 2012); United States v. Cornelius, 696 F.3d 1307 (10th Cir. 2012). Because Thompson was sentenced to a mandatory minimum sentence prior to the enactment of FSA, the FSA cannot be retroactively applied to reduce his sentence.

### B. Challenge to the Jury Instructions

#### 1. Personal Use Amount

Thompson argues that this court erred in not defining "personal use amount" in the jury instructions with respect counts eight and seventeen, thereby, lessening the government's burden of proof beyond a reasonable doubt. This court instructed the jury with respect to counts eight and seventeen (possession with intent to distribute heroin) as follows:

> If you find that an individual intended to possess a quantity of heroin or crack cocaine more than that which would be needed for personal use, then you may find that person intended to distribute the heroin or crack cocaine

The court did not, however, define how much of either substance would constitute a "personal use amount." Thompson asserts that the Due Process Clause was violated because by not instructing the jury about what is a personal use amount the prosecution was relieved of part of its burden of proof. With respect to count eight, Thompson asserts that the court's reservation of decision on his motion for judgment of acquittal until after the jury returned its verdict indicates that the proof of his guilt was not overwhelming. With respect to count seventeen, he claims that the evidence was inadequate without the jury being provided a working definition of personal use quantity. Thompson argues that the failure to define personal use amount was an instruction to the jury to convict if any

drugs were exchanged and shifted the burden of proof of personal-use amount possession to Thompson.

The issue, as pointed out by the government, with respect to a collateral attack on a jury instruction is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" Cupp v. Naughton, 414 U.S. 141, 146-47 (1973). Thompson did not object during trial to the instruction in the instant case. In United States v. Frady, 456 U.S. 152 (1982), the Court stated, "to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains. . . ." Id. at 168. The Third Circuit Court of Appeals has noted certain issues may be waived when they were not timely raised. It stated:

> Thompson provides no specific argument as to why the evidence actually admitted at trial was insufficient to allow a jury to conclude that he was a member of the heroin conspiracy. He has thus waived the issue.

Ferguson, 394 F. App'x at 876 n.3.

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," or that he is "actually innocent." Bousley v. United States, 523 U.S. 614, 622 (1998) (internal citations omitted). Thompson never addresses, however, the reasons these claims were not advanced at trial or on appeal. The "cause and prejudice" branch of the Bousley test is therefore not met. The only remaining question here is whether Thompson established his "actual

8

innocence." "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. Bousley, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-328 (1995) (internal citations omitted)).

Here Thompson did not allege any basis regarding the cause for his procedural default, except with respect to ineffective assistance of counsel, which will be addressed below. The jury was instructed that if the amount intended to be possessed was more than the amount needed for personal use it could find a defendant intended to distribute the illegal substance. There was abundant evidence to show the amounts involved in the offenses at counts eight and seventeen were more than that needed for personal use. Thompson makes reference to the court's reservation of decision with respect to count eight. The basis for the reservation, however, did not concern whether the amount possessed was for personal use. The court expressed concern about the evidence relevant to the "on or about" date in the indictment for count eight. (ECF No. 754 at 159-60). Under those circumstances, petitioner cannot prevail because he cannot show actual prejudice.

No decision was found which required the court to define the phrase "personal use amount." In United States v. Rhodes, 32 F.3d 867 (4th Cir. 1994), which involved a conviction for drug offenses, the jury, during its deliberations sent a question to the judge: "Is there a definition as to the amount of crack cocaine in possession considered to be for distribution vs. personal use?" Rhodes 32 F.3d at 869. The court responded: "The specific answer to the jury's question is no. The jury must determine from the evidence and beyond a reasonable doubt if the defendant possessed the controlled

substance with the intent to distribute it." Id. at 870.  The court of appeals reviewed that ruling for clear error.  The court of appeals noted: "The answer that the district court gave to the jury's question was so patently legally correct that it is beyond argument." Id. at 874.  Much like in Rhodes, the court cannot find a clear error in failing to instruct the jury about a definition for "personal use amount."

### 2. Lesser Included Offense

Thompson in his reply brief argues the court erred in not giving a lesser included offense instruction.  Because this issue was not raised previously, Thompson needs to show cause to excuse the procedural default and actual prejudice.  Frady, 465 U.S. at 168.  Here, Thompson cannot show prejudice because the evidence to convict him was overwhelming.

The evidence to support his convictions were substantial.  "There is no indication that had the jury been instructed on the lesser included offense, it would have convicted [him] only on simple possession."  United States v. Jansen, 218 F.Supp.2d 659, 670 (M.D.Pa. 2002) (citing Harris v. United States, 938 F.2d 882, 883 (8th Cir. 1991)); Leach v. Kolb, 911 F.2d 1249, 1261 (7th Cir. 1990); Singleton v. Lockhart, 871 F.2d 1395, 1400-01 (8th Cir. 1989).

Thompson argues that at least with respect to count eight this court commented: "It is a close case. . . ."  (ECF No. 765 at 160.)  That comment, however, did not address the concern about whether the evidence was sufficient to support the intent to distribute, rather than simple possession – the lesser included offense.  The evidence was more than sufficient to show Thompson possessed heroin with the intent to deliver.  The issue that was close involved whether the "on or about" language of the indictment for count eight

10

was sufficient in light of the evidence to be "sufficiently close in time" for that "count to stand . . . ." (Id. at 150). The court concluded it was and a judgment of acquittal was not granted.

C. **Ineffective assistance of counsel.**

To establish a Sixth Amendment violation of the right to effective assistance of counsel, a defendant must show: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) prejudice resulted. Strickland v. Washington, 466 U.S. 668, 687-88, 80 (1984).

"To show deficient performance, 'a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness. . . . The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Ross, 672 F.3d at 210 (quoting Harrington v. Richter, 131 S.Ct. 770, 787 (2011)). "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. As both of these components must be demonstrated to support a claim of ineffective assistance, the absence of one negates the need to address the other. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

The petitioner argues that his appellate counsel was ineffective for failing to advance arguments regarding the application of the FSA and his trial and appellate

counsel were ineffective for not challenging a jury instruction and for failing to request a lesser included offense instruction. The claims raised, however, do not show prejudice.

**1. Appellate Counsel's failure to supplement Thompson's direct appeal to include challenges with respect to the FSA.**

To satisfy the prejudice requirement under Strickland for ineffective assistance of appellate counsel, the petitioner must show that "there is a reasonable probability that the result of the appeal would have been different had counsel's stewardship not fallen below the required standard." United States v. Mannino, 212 F.3d 835, 845 (3d Cir. 2000). The test under Strickland for a claim of ineffective of appellate counsel is "not whether petitioners would likely prevail upon remand, but whether [the Court of Appeals] would have likely reversed and ordered a remand." Id. at 844.

An appellate counsel who files a merits brief "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000). "[I]t is difficult to demonstrate that counsel was incompetent" because "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance be overcome." Id. at 288 (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)); see Jones v. Barnes, 463 U.S. 745, 750-54 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies [prior precedents]."); Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) ("It is a well-established principle that counsel decides which issues to pursue on appeal."). It follows, therefore, that "[as] a general matter, it is not

inappropriate for counsel, after consultation with the client, to override the wishes of the client when exercising professional judgment." Id.

Thompson's counsel responded to an instruction by Thompson to include a challenge in his appeal on the basis of the FSA's retroactivity by sending Thompson a copy of a newsletter. The newsletter contained a discussion to the effect that the provisions of the FSA were not applied to persons already sentenced. (ECF NO. 1001 at 27). Thompson asserts that a change in law between the trial court and appellate court decisions, whether by judicial decision or legislative action, requires the appellate court to apply the new law. Thompson filed a Pro Se Motion To Stay Mandate, which was withdrawn when Thompson learned that "Local Rules of the Third Circuit" prohibited pro se pleadings by a defendant represented by counsel. Thompson's appellate counsel did not pursue possible relief pursuant to the FSA. In his reply Thompson argues that Dorsey supports his position. As noted, the FSA does not change the penalties applicable to Thompson's conviction because he was sentenced to a mandatory minimum sentence prior to August 3, 2010, the date the FSA was enacted. He would not have prevailed on this issue on appeal. See Hollins, 2012 U.S. App. Lexis at *5; Cornelius, 696 F.3d at 1328. As such, the second Strickland prong cannot be satisfied – Thompson cannot show prejudice. Therefore, no relief can be granted with respect to this argument.

> **2. Trial counsel's and appellate counsel's failure to challenge the jury instructions about personal use amount and to request a lesser include offense instruction.**

Thompson's trial and appellate counsel did not challenge the jury instructions for failure to define personal use amount in the instruction.

Judicial scrutiny of a trial counsel's performance must be highly deferential and a court must "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'.'" United States v. Hankerson, 496 F.3d 303, 310 (3d Cir. 2007) (quoting Strickland, 466 U.S. at 689). A court's "review of ineffective assistance of counsel claims does not permit [it], with the benefit of hindsight, to engage in speculation about how the case might best have been tried." Hess v. Mazurkiewicz, 135 F.3d 905, 908 (3d Cir. 1998).

To rebut the presumption that the trial counsel's performance fell within the range of reasonable professional assistance, the petitioner "must show either that (1) the suggested strategy (even if sound) was not in fact motivating counsel, or (2) that the actions could never be considered part of a sound strategy." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005). Yet, "strategic choices made [by trial counsel] after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690-91.

Thompson argues that even if trial counsel did not raise the issue of deficient jury instructions at trial, he should have done so on appeal. Thompson argues prejudice is shown when a defendant is convicted on the basis of deficient or erroneous jury instructions that lessened the prosecution's burden of proof beyond a reasonable doubt as to each element of the charged crime.

The instruction given to the jury with respect to personal use amount was not deficient, and as noted there was sufficient evidence presented to show the amounts

14

proven were not for personal use. Thus, no prejudice can be shown. The jury found the government proved beyond a reasonable doubt that the defendant possessed with intent to distribute controlled substances. The jury rejected any argument that the controlled substances were for personal use. Under these circumstances, petitioner cannot establish the prejudice prong under Strickland with respect to the failure of counsel to challenge the jury instruction with respect to personal use amount.

Thompson also argues the trial counsel should have requested a lesser included offense with respect to counts eight and seventeen. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Marshall v. Cathel, 428 F.3d 452, 462 (3d Cir. 2005). Here, failure to ask for the instruction was not demonstrated by Thompson to be prejudicial. The evidence to support Thompson's convictions was substantial. When the evidence of the more serious offense is great, the failure to request a lesser included offense charge is not prejudicial. See Jansen, 218 F.Supp.2d at 670 (prejudice where not shown there was no indication that had the lesser included offense charge been given the jury would have convicted the defendant of that lesser offense).

## IV. Need for Evidentiary Hearing

The court determines that petitioner's motion shall be denied without a hearing because the motion and files and records of the case show conclusively that petitioner is not entitled to relief.

## V. Certificate of Appealability

When a district court issues a final order denying a § 2255 petition, the court must also make a determination about whether a certificate of appealability ("COA") should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination as to whether a certificate should issue. See 3d Cir. L.A.R. (2008). Based upon the motion and filed and records of the case, and for the reasons set forth herein, the court finds that petitioner did not show a substantial denial of a constitutional right. Therefore, a COA should not issue.

**VI. Order**

An appropriate order will be entered.

By the court:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

Dated: February 28, 2013

cc: Roscoe Thompson
     P.O. Box 1000
     Virginia Hall
     Petersburg, VA 23804